[No. 38771.    Department Two.    March 2, 1967.]

STUART R. GROVES, *Appellant,* v. GENEVA R. GROVES, *Respondent.**

*Nicolai, Montgomery & Sorrel* (*Orly J. Sorrel,* of counsel), for appellant.

*Robert P. Karr* (of *Karr, Tuttle, Campbell, Koch & Granberg*), for respondent.

HAMILTON, J.—This is an appeal from the findings of fact, conclusions of law and decree in a divorce action.

*Reported in 424 P.2d 654.

Appellant husband assigns error only to the trial court's disposition of a life insurance policy and a provision for alimony.

The salient facts are these: The parties were married in 1936. At that time appellant was in dental school and respondent, who had completed 2 years of college, was employed as a clerk-typist at a salary ranging from $100 to $150 per month. Respondent continued her work and contributed materially to appellant's educational expenses and toward maintaining the parties' home. Appellant graduated from dental school in 1940, and since that time has actively engaged in the practice of his profession. At the time of appellant's graduation, respondent ceased her employment and assisted him in establishing his dental practice. One child, a daughter, was born to the parties in 1942.

In December 1962, the parties separated, and in January, 1963, they entered into a property settlement agreement, which, among other things, provided that appellant would pay respondent the sum of $250 per month as alimony for a period of 6 months "or until a divorce action shall be commenced by either party, whichever occurs first and that thereafter such sum as the parties may agree upon or the Court may award for a specified time." Several life insurance policies on the life of appellant, one in the amount of $20,000, were not mentioned in or disposed of by the agreement.

Following the separation, respondent again obtained employment as a clerk-typist at a net starting salary of $218 per month. Appellant continued with his dental practice, which was then returning an annual adjusted gross income of approximately $12,000.

Appellant commenced this action in January, 1965, seeking a divorce and confirmation of the property settlement agreement. Respondent counterclaimed for separate maintenance in the amount of $450 per month. The cause came on for trial in October, 1965, following which the trial court, without assessing fault, awarded both parties a divorce, approved the property settlement agreement,

awarded respondent the then cash value of the $20,000 life insurance policy with the remaining interest in the policy to go to appellant along with the other outstanding policies on his life, ordered appellant to maintain the $20,000 life insurance policy in effect with respondent as beneficiary so long as alimony payments were required, and directed the payment of $70 per month as alimony until "further order of the court or until defendant [respondent] reaches age 65 years, remarries or dies, whichever event shall occur first."

In challenging the trial court's disposition of the $20,000 life insurance policy, appellant concedes the power of the court to distribute the asset. He argues, however, that the trial court's allocation amounts to an abuse of discretion. We cannot agree. Under the property settlement agreement, respondent received household furniture of minimal value, and a 1957 Chevrolet automobile, and appellant assumed the then community debts and received a 1960 Rambler station wagon, along with his professional office furniture, fixtures, equipment, and accounts receivable. At the time of trial, approximately 2½ years later, the apparent disparity in the property division remained except that appellant, without significantly reducing the debts he assumed or enhancing his professional income, had acquired a new 1965 Rambler convertible. Under these circumstances, the trial court was clearly exercising sound discretion in balancing the property division between the parties by awarding respondent a cash interest in the designated insurance policy and securing her rights as a beneficiary for a period of time. The trial court's judgment in this respect is affirmed.

Appellant next challenges the award of alimony. In this respect he in effect contends that (a) respondent failed to establish her need for and his ability to pay the alimony, and (b) the provision that the award should continue until respondent reaches age 65 amounts to a prolonged lien upon his earnings and tends to subvert her duty to become self-supporting. He predicates contention (a) upon evidence in the record indicating that his professional income has not increased and that respondent, through periodic but

modest salary increases, has increased her take-home pay from $218 per month in 1963 to $266 per month at the time of trial, with the prospect that future increases will bring her take-home pay up to $283.68 or more. He erects contention (b) upon language taken from *Dakin v. Dakin,* 62 Wn.2d 687, 384 P.2d 639 (1963), wherein we reiterated the policy of this state relative to alimony—that it is not a matter of right nor the means of placing a perpetual lien upon a divorced husband's future income.

Our review of the evidence adduced at trial, together with the trial court's oral decision, convinces us that appellant's contentions are without significant merit. As we pointed out in *Stacy v. Stacy,* 68 Wn.2d 573, 576, 414 P.2d 791 (1966):

> The courts should, when awarding alimony at the divorce of a long marriage, consider and weigh the future earning capabilities of both parties and allow the wife such sums for whatever period of time seems right under all of the circumstances. *Underwood v. Underwood,* 162 Wash. 204, 209, 298 Pac. 318 (1931). The necessities of the wife and the financial ability of the husband represent the fundamental criterion upon which the award rests. *Hogberg v. Hogberg,* 64 Wn.2d 617, 393 P.2d 291 (1964). But there are numerous other factors which must be weighed, measured and adjusted to enable the court to apply this criterion. The final distribution of property between the spouses, the amount of child support and alimony, if any, all derive from a compound of many ingredients, including the age, health and employment history of the parties, their education, training and business or occupational experience, the prospects of future earnings, the ages, health and aptitudes of the children, and the amounts, nature and origin of the property to be divided, and the total property possessed by or likely to be acquired by the parties. And not to be ignored is the question of fault.

The trial court gave careful consideration to the various ingredients going into an alimony award, and particularly gave weight to the necessities of the respondent and the financial capabilities of appellant. We find no manifest abuse of discretion in the modest award complained of, and,

since the award is made subject to the further order of the court, we find it to be consistent with the policy expressed in *Dakin v. Dakin, supra.*

The judgment is affirmed. Respondent shall recover her costs.

FINLEY, C. J., OTT and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.